J-A06040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA BRIAN LOVE | : | |
| | : | |
| Appellant | : | No. 809 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 9, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001365-2018

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED:  July 1, 2021**

Joshua Brian Love (Appellant) appeals from the judgment of sentence entered in the Erie County Court of Common Pleas, following his jury convictions of two counts each of aggravated assault, terroristic threats, and simple assault, and one count of disorderly conduct.[1]  Appellant alleges trial counsel was ineffective for failing to raise an insanity or mental infirmity defense and for failing to present mitigating mental health factors at sentencing.  For the following reasons, we affirm.

The facts underlying Appellant's convictions, as developed during his trial, are as follows.  On April 21, 2018, Appellant was an inmate in the Erie County prison, where he was involved in an incident with prison employees. N.T. Jury Trial, 2/6/19, at 34.  Corrections Lieutenant Paul Gardner was called

---

[1] 18 Pa.C.S. §§ 2702(a)(3), 2706(a)(1), 2701(a)(1), 5503(a)(1), respectively.

to the Restricted Housing Unit (RHU), where Appellant was housed, to "calm him down," due to Appellant's "very bizarre behavior." *Id.* at 33, 35-36, 38. Before entering the unit, Lieutenant Gardner turned on his body worn camera to film the incident.[2] *Id.* at 37, 49.

Upon approaching Appellant's cell, Lieutenant Gardner observed Appellant naked, "attempting to bite his footwear [and] beating the lights inside the cell [and the glass on the door] with [a] sandal." N.T., 2/6/19, at 36, 41. When Lieutenant Gardner attempted to enter, Appellant became "agitated and aggressive." *Id.* at 38-39. Lieutenant Gardner "order[ed] Appellant] to come up [to the door to be handcuffed] or he would be [pepper] sprayed." *Id.* at 40. "After several failed attempts" to get Appellant to the cell door, Lieutenant Gardner "deployed" pepper spray. *Id.* at 41. Appellant avoided the spray by turning his back toward Lieutenant Gardner. *Id.* As a result, "an extraction team [comprised of seven people] was assembled to go in after him." *Id.* at 42-43. Appellant, who was "still agitated . . . took his mattress and was holding it up against the cell door to cover [the officers'] view." *Id.* at 44.

After opening the cell door, the extraction team was unable to enter the cell to restrain Appellant because "he came out before the team could go in and fought his way out of the cell." N.T., 2/6/19, at 46. Appellant "appeared

---

[2] The Commonwealth played Lieutenant Gardner's body worn camera footage at trial. N.T., 2/6/19, at 47.

to be confused as to what's going on" and "start[ed] calling somebody's name." *Id.* Appellant refused orders to "[s]top resisting[ or to] get on the ground." *Id.* at 47. Throughout the incident, Lieutenant Gardner repeatedly deployed his taser on Appellant to get him to comply with the officers' orders. *Id.* at 59-60. Lieutenant Gardner testified that Appellant was "attempting to bite several people" during the extraction and he heard Appellant say "I just bit him[,]" that "he's HIV positive[,]" and "I got AIDS" during the incident. *Id.* at 47, 60-62.

Appellant was taken to the "decontamination shower" and placed in a "restraint chair" for an examination. N.T. Jury Trial, 2/7/19, at 6, 9. As the nursing staff attempted to examine Appellant, he started "to spit," thus his mouth was covered with a towel until officers could get a "spit shield placed on him." *Id.* at 6-7. During the incident, Appellant bit "through [Lieutenant Gardner's] leather glove and ripped open the tip of [his] finger[,]" stating again "I bit him[.]" *Id.* at 14-15. Lieutenant Gardner responded by striking Appellant once "with a closed fist on the right side of the face." *Id.* at 16.

Three other Erie County prison officers sustained injuries from Appellant, including "red marks[,]" bites, and a sprained shoulder. N.T., 2/7/19, at 18, 21, 71-72.

Appellant testified on his own behalf, explaining he "didn't understand why [he] came to Erie County [p]rison" because he "got picked up on an unpaid child support warrant which [he] already paid[.]" N.T., 2/7/19, at 104. He claimed he "started asking questions [and then] started [ ] acting up a

little bit and hitting the cell[.]" *Id.* at 105.  Appellant was then placed in RHU where he continued "hitting" his cell.  *Id.* at 105, 107.  Appellant claims he was naked because he was on suicide watch, and began eating his sandal "in case something happened to [him]" so people would know he was in Erie County Prison.  *Id.* at 105, 109.  Appellant testified he "refused orders" because he did not "understand why [he] was still incarcerated[.]" *Id.* at 106.

After refusing to comply with orders, Appellant "got sprayed" with pepper spray in his eyes and throat.  N.T., 2/7/19, at 106.  He "tried to push the button for hot water" but no water came out so he began to panic and "had to use the toilet water[.]" *Id.* at 106-07.  Once the door to his cell was open, Appellant "came out [of] the cell" because "there was so much [m]ace[.]" *Id.* at 110-11.  Appellant claims that because his breathing and vision were impaired, he went into "survival mode[.]" *Id.* at 111.  Lapsing "in and out of consciousness" every time he was tased, he claimed he did not "intentionally [ ] spit on anybody[,]" was not aware he bit any officer "until four days after everything happened[,]" and "told [the officers he] had AIDS [and bit them] so they [w]ould stop beating [him] up." *Id.* at 111-13, 120.

Appellant detailed his injuries, including one to his eye when he "got punched [while] strapped in the [restraint] chair[,]" "cuts" on his wrists, "multiple bruises" on his body, "excessive [t]aser marks" that "burned [his] skin[,]" and "an eighth-of-an-inch gash" between his toes.  N.T., 2/7/19, at 94, 96-97, 99, 101-02.

On February 7, 2019, a jury found Appellant guilty of two counts each of aggravated assault, terroristic threats, simple assault, and one count of disorderly conduct.[3]   Appellant was sentenced on April 9, 2019, to an aggregate term of 30 to 76 months' incarceration and a one-year consecutive term of probation.

On April 18, 2019, Appellant filed a *pro se* notice of appeal.[4]  Thereafter, trial counsel filed a motion to withdraw which the trial court granted following a **Grazier**[5] hearing on May 29, 2019.   On June 6, 2019, the trial court appointed stand-by counsel, James Pitonyak, Esquire, as per Appellant's request.  Appellant timely complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues on appeal:

1. Was [ ] Appellant[']s trial counsel ineffective in failing to set forth an insanity or mental infirmity defense at trial?

2. Was [trial] counsel further ineffective by not presenting the mitigating factor of Appellant[']s mental health condition at the time of sentencing?

---

[3] The jury found Appellant not guilty of two counts of aggravated harassment by a prisoner.  **See** 18 Pa.C.S. § 2703.1.

[4] On April 15, 2019, Appellant filed a "Notice of Pending Direct Appeal" in which he raised claims of ineffective assistance of counsel and requested trial counsel, Jason Checque, Esquire, to withdraw from representation.  **See** Appellant's Notice of Pending Direct Appeal, 4/15/19.

[5] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988) (holding that when a waiver of counsel is sought, "an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one").

Appellant's Brief at 1.

Both of Appellant's claims argue ineffectiveness of trial counsel. In his first claim, Appellant avers trial counsel failed to "substantially investigate and file a Notice of Intent to Raise an Insanity/Mental Infirmity Defense." Appellant's Brief at 5. Appellant states he requested counsel raise an insanity defense, "but trial counsel indicated 'it was too late[.]'" *Id.* (emphasis omitted). Appellant contends that at the time of the incident, he was subject to an involuntary mental health commitment. *Id.* In his second claim, Appellant argues trial counsel was "further ineffective by not presenting the mitigating factor of Appellant[']s mental health condition at the time of sentencing[.]" *Id.* at 6.

In reviewing ineffective assistance of counsel claims on direct appeal, our Supreme Court held that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). The Supreme Court later carved out two exceptions to this rule:

> First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.
>
> Second, . . . where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express

- 6 -

waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

*Commonwealth v. Holmes*, 79 A.3d 562, 563-64 (Pa. 2013) (citations and footnotes omitted).  Subsequently, the Supreme Court

adopt[ed] an additional exception to *Grant's* general deferral rule, requiring trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review.

*Commonwealth v. Delgros*, 183 A.3d 352, 361 (Pa. 2018) (defendant was statutorily ineligible for the PCRA because he was sentenced only to pay a fine).

In the instant case, Appellant is neither statutorily precluded from filing a PCRA petition nor did he explicitly waive review under the PCRA.  The only mention of the PCRA in Appellant's brief is when he states:

Though normally this would be appropriate to raise[ ] at a PCRA filing, current counsel feels the need to raise it now to prevent a further delay of justice for Appellant.

Appellant's Brief at 6.  This statement does not satisfy *Holmes*.  *See Holmes*, 79 A.3d at 564.

Further, Appellant has failed to demonstrate "extraordinary circumstances" warranting direct appeal review.  *See Holmes*, 79 A.3d at 563.  Appellant argues trial counsel failed to raise a defense and mitigating factors at sentencing when trial counsel "was aware [ ] that may have been appropriate[.]"  Appellant's Brief at 6.  Appellant requests an evidentiary hearing to prove these claims.  *Id.* at 7.  Appellant's acknowledgment that he

needs trial counsel's testimony to prove he is entitled to relief undermines his entire argument since his ineffectiveness claims are not "apparent from the record." ***See Holmes***, 79 A.3d at 563. Therefore, we deny relief without prejudice for Appellant to file a timely PCRA petition if he chooses.

Because Appellant did not satisfy any exceptions to ***Grant*** and did not waive his right to file a future PCRA petition, we do not reach his issues on the merits. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/1/2021